UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KATHRYN W. DALE, | ) |
| | ) CASE NO. C10-1255-RAJ |
| Plaintiff, | ) |
| | ) |
| v. | ) REPORT AND RECOMMENDATION |
| | ) RE: SOCIAL SECURITY DISABILITY |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) APPEAL |
| | ) |
| Defendant. | ) |
| _____ | ) |

Plaintiff Kathryn W. Dale proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court recommends that this matter be AFFIRMED.

/ / /

/ / /

/ / /

REPORT AND RECOMMENDATION
PAGE -1

## FACTS AND PROCEDURAL HISTORY

Plaintiff was born on XXXX, 1963.[1] She has a GED and two years of community college. She previously worked as a bar manager and waitress. (AR 25, 35.)

Plaintiff filed an application for DIB and protectively for SSI benefits on November 6, 2006, alleging disability beginning April 7, 2005. She is insured for DIB through December 31, 2010. (AR 16.) Plaintiff's applications were denied at the initial level and on reconsideration. Plaintiff timely requested a hearing.

On June 25, 2009, ALJ Mattie Harvin-Woode held a hearing, taking testimony from plaintiff and a vocational expert. (AR 29-75.) On August 25, 2005, the ALJ issued a decision finding plaintiff not disabled. (AR 16-26.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on June 11, 2010 (AR 1-3), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, it must be

---

1 Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

determined whether a claimant suffers from a severe impairment.  The ALJ found plaintiff's degenerative disc disease (lumbar), ADHD, depression, and skin infections severe.  Step three asks whether a claimant's impairments meet or equal a listed impairment.   The ALJ found that plaintiff's impairments did not meet or equal the criteria of a listed impairment.   If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work.  The ALJ found plaintiff able to lift and carry twenty pounds occasionally and ten pounds frequently, able to stand, walk, and sit for about six hours in an eight hour day.  She would need to sit down every two hours for a few minutes.  She was limited to simple to semi-skilled work. With that assessment, the ALJ found plaintiff able to perform her past relevant work.   With the assistance of a vocational expert, the ALJ also found plaintiff capable of performing other jobs existing in significant numbers in the economy, such as data entry, library shelver, housekeeper/cleaner, and document preparer. Therefore, the ALJ found plaintiff not disabled.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).   Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).   If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

REPORT AND RECOMMENDATION
PAGE -3

Plaintiff argues that the ALJ erroneously evaluated the opinions of examining psychologists, as well the opinions of her treating physician and of two examining nurses, and failed to properly develop the evidentiary record.[2]  She requests remand for a new hearing. The Commissioner argues that the ALJ's decision is free of legal error, supported by substantial evidence, and should be affirmed.

Evaluation of Medical Opinions

The ALJ may reject physicians' opinions "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes*, 881 F.2d at 751).  Rather than merely stating her conclusions, the ALJ "must set forth [her] own interpretations and explain why they, rather than the doctors', are correct."  *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "'clear and convincing'" reasons.  *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)).  Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in

---

[2] Plaintiff's Opening Brief contains a lengthy Statement of Facts, as well as a boilerplate discussion of the sequential evaluation process.  In fact, plaintiff spends over half of her brief in this unnecessary exercise.  The parties are reminded that a discussion of the relevant facts should be conducted in the context of specific assignments of error.

REPORT AND RECOMMENDATION
PAGE -4

the record for so doing." *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

An ALJ may reject a treating physician's opinion if it is based "'to a large extent'" on a claimant's self-reports that have been properly discounted as incredible. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (cited sources omitted). *See also Bray v. Comm'r of SSA*, 554 F.3d 1219, 1228 (9th Cir. 2009) ("As the district court noted, however, the treating physician's prescribed work restrictions were based on Bray's subjective characterization of her symptoms. As the ALJ determined that Bray's description of her limitations was not entirely credible, it is reasonable to discount a physician's prescription that was based on those less than credible statements.") The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings. *Thomas*, 278 F.3d at 957.

A. <u>Evaluating Psychologists Phyllis Sanchez, Ph.D. and Victoria McDuffee, Ph.D.</u>

Phyllis Sanchez, Ph.D. conducted a psychological evaluation of plaintiff on August 28, 2007. (AR 391-95, 505-08.) Evaluating psychologist Victoria McDuffee, Ph.D. conducted an evaluation on January 26, 2009. (AR 509-14.) Dr. Sanchez diagnosed "ADD severe/unmedicated" by "history & presentation today", as well as "Panic disorder assoc w/ psych factors/med condition". (AR 505-06.) Dr. McDuffee diagnosed "Attention Deficit Disorder, Severe, unmedicated – by hx, Panic Disorder w/out agoraphobia – likely related to medical condition, Major Depressive Disorder, Recurrent, Severe w/out Psychotic Features." (AR 511.) Both psychologists assessed functional mental limitations of varying degrees from mild to severe. Some of the potential functional limitations were assessed at the same level of

severity by the two psychologists, and some were not.

The psychological evaluations by Dr. Sanchez and Dr. McDuffee were considered by the ALJ, along with a February 5, 2009 evaluation by Paul Aluan, MHPRC (AR 522-25):

> Three Washington DSHS psychological evaluations are presented, each of which are based upon the [plaintiff's] subjective reporting. In the evaluation by Victoria McDuffee, Ph.D. the [plaintiff] reported no treatment "secondary to the lack of willingness of Compass and other private psychiatrists to treatment (sic) ADHD. She indicates they refused to see her," [.] As there are medical records form (sic) Compass, the [plaintiff's] statements here appear to be false and comport with the notes form (sic) several providers regarding her obsession with being treated for ADHD despite not exhibiting corresponding symptoms. Because these three evaluations are [based] upon the [plaintiff's] subjective and sometimes inaccurate reporting and do not consider the extensive medical record, these evaluations are granted minimal weight.

(AR 25; internal citations to administrative record omitted.)

Plaintiff argues that the medical opinions of Drs. Sanchez and McDuffee[3] are uncontradicted and, therefore, a rejection of their opinions by the ALJ must be based on clear and convincing evidence. Plaintiff assigns error to the ALJ's consideration of these opinions, arguing that the reasons given are not supported by substantial evidence and not "clear and convincing." Plaintiff disputes the ALJ's reference to the existence of medical records from Compass Health, contending that, in fact, there are not any treatment notes in the record from that facility and that, while evaluations reports were prepared, there is no evidence plaintiff was ever actually treated at Compass Health. Plaintiff disputes the accuracy of the assertion that she was obsessed with being treated for ADHD despite the opinion of her doctors to the contrary, arguing that the evidence relied on by the ALJ was an evaluation completed by a

---

[3] Plaintiff repeatedly refers to these psychologists as "treating physicians" (Dkt. 14 at 1, 2), but they are psychologists who each apparently saw plaintiff once for purposes of a DSHS evaluation.

nurse, who is not an "acceptable medical source" as defined by the regulations. Plaintiff further disagrees with the ALJ's statement that her skin lesions and ADHD symptoms abated when her doctor stopped treating her for ADHD.

The Commissioner argues that the ALJ has the final responsibility for resolving conflicts in the evidence and drew conclusions that were specific and legitimate inferences based on substantial evidence in the record. *Tommasetti v. Astrue*, 553 F.3d 1035, 1041 (9th Cir. 2008); *Morgan,* 169 F.3d at 600-01; *Magallanes*, 881 F.2d at 755. The Commissioner argues it is reasonable to discount prescribed work limitations that are based on a patient's subjective characterization of symptoms if the individual has been found less than credible. *Bray*, 554 F.3d at 1228.

Plaintiff does not succeed in demonstrating error in the ALJ's evaluation of the opinions of Dr. Sanchez or Dr. McDuffee. The opinions of these two psychologists as to plaintiff's functional limitations are not uncontradicted. Indeed, the two doctors do not entirely agree with each other. Dr. Sanchez found plaintiff moderately limited in the ability to understand, remember and follow complex (more than two step) instructions and mildly limited in the ability to learn new tasks (AR 507); Dr. McDuffee found no limitations in these areas (AR 512). Dr. McDuffee assessed severe limitations in the ability to exercise judgment and make decisions (*id.*); Dr. Sanchez found marked limitations in that area (AR 507). Dr. Sanchez found marked limitations in the ability to perform routine tasks (*id.*); Dr. McDuffee found no limitations in that area (AR 512). Other differences occur in the assessment of limitations in the area of social factors, in the likelihood of mental health intervention to restore or substantially improve plaintiff's ability to work, and in the estimation of how long the

REPORT AND RECOMMENDATION
PAGE -7

impairments would last. (AR 508, 513.) Furthermore, the determination of RFC or the application of vocational factors are issues reserved to the Commissioner, and no special significance need be assigned to the opinion of a medical source as to those issues. 20 C.F.R. §§ 404.1527(e)(3), 416.927(e)(3).

At any rate, whether the opinions are considered contradicted or not, the Court finds the ALJ provided legally sufficient reasons for giving them minimal weight. Neither psychologist based her opinions on any review of the medical record, but rather relied on plaintiff's reports.[4] *See*, *e.g., Matney v. Sullivan*, 981 F.2d 1016, 1021 (9th Cir. 1992) (upholding the ALJ's decision to grant little weight to the opinion of a physician who examined the claimant only one time and produced a brief report, with a diagnosis based primarily on the medical history and subjective complaints as related by the claimant). Elsewhere in the decision, the ALJ found plaintiff not entirely credible (AR 21), to which assessment plaintiff does not assign error. Further, the ALJ found plaintiff's recitation of her medical history to Dr. McDuffee to be false in that she reported "no treatment 'secondary to the lack of willingness of Compass and other private psychiatrists to treatment [sic] ADHD. She indicates they refused to see her.'" (AR 25.) The ALJ found that, to the contrary, there are medical records from Compass in the record, and concluded that plaintiff's statements are consistent with an obsession with being treated for ADHD as noted by several other providers, despite a lack of corresponding symptoms. (*Id.*)

The Court does not find unreasonable the inferences drawn by the ALJ. The ALJ

---

[4] Dr. Sanchez, but not Dr. McDuffee, also cited plaintiff's presentation in the evaluation. (AR 505.)

REPORT AND RECOMMENDATION
PAGE -8

properly found not credible plaintiff's report that Compass Health "refused to see her." Records from Compass indicate that she was, in fact, seen for a psychiatric consultation on several occasions (AR 380-90) in the course of which diagnosis and treatment recommendations were made (with her agreement), medication changes were implemented, literature was provided, she was given an opportunity to ask questions, and the evaluation was sent to her primary care provider (AR 383).   Nor does plaintiff demonstrate the accuracy of her statement that "other private psychiatrists" refused to see her, as she reported to Dr. McDuffee. Plaintiff also argues that the only evidence supporting the ALJ's observation about plaintiff's "obsession" with being treated for ADHD was "the opinion of one nurse[.]"   (Dkt. 12 at 13.) However, Linda D. Crabtree, MC LMHC CMHS, is not a nurse, but a Licensed Mental Health Consultant with a Master's Degree in Counseling.   Ms. Crabtree noted in the mental health assessment:   "This client is convinced she suffer[s] from ADHD.   She does not meet the criteria for this diagnosis.   She reports she has done "research" on the subject and can state multiple symptoms of the disorder.   Yet her behaviors and the history provided do not support this." (AR 383.)

      Finally, plaintiff's argument regarding the compatibility of the diagnoses of ADHD and Adult ADD and the effect of the discontinuance of her ADD medication on her skin condition are inapposite, as these issues do not relate to the ALJ's consideration of the opinions of Dr. Sanchez or Dr. McDuffee.   For this reason, and for the reasons stated above, the Court finds no error in the ALJ's assessment of the opinions of Drs. Sanchez and McDuffee.

B.    <u>Janiese Loeken, M.D.</u>

      Plaintiff argues that the ALJ failed to give a reason for rejecting the opinion of treating

REPORT AND RECOMMENDATION
PAGE -9

physician Janiese Loeken, M.D.   This assertion is unfounded, however, as the ALJ discussed Dr. Loeken's records as follows:

> There are no additional notes regarding the [plaintiff's] alleged ADHD until a latter [sic] dated November 2, 2004 signed by Janiese Loeken, M.D. which stated that the [plaintiff] was "diagnosed with ADHD in May, 2004" and that Dr. Loeken, M.D. "initially treated Ms. Dale on 9/15/2004 and treatment with Ritalin has been beneficial,"[.] While there is no reason to doubt that this treatment occurred, there are no records of it.  Dr. Loeken's conclusory statements alone are not enough to establish the [plaintiff's] diagnosis and subsequent care.

(AR 23; internal citations to administrative record omitted.)

The Court does not find error in the ALJ's consideration of Dr. Loeken's opinion.  The ALJ may disregard a treating physician's opinion which is "brief and conclusory in form with little in the way of clinical findings to support [its] conclusion."  *Magallanes,* 881 F.2d at 751 (citing *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986)).  Dr. Loeken's opinion regarding plaintiff's work restrictions was set forth in a short letter directed to "Human Resources Therapeutic Health Services To Whom It May Concern" and consists of the following statement:   "Ms. Dale has a diagnosis of ADHD and needs consideration regarding the complexity of her employment.  Working at a single focused position would be necessary for her in order to improve her performance and lead to success." (AR 221.) The record is devoid of any other chart notes or treatment records from Dr. Loeken, with the exception of another short letter indicating that treatment with Ritalin has been beneficial.  (AR 222.)   The ALJ provided legally sufficient reasons for not accepting the opinion of Dr. Loeken.

C.     "Non-acceptable" medical source opinions

In evaluating the weight to be given to the opinion of medical providers, Social Security

regulations distinguish between "acceptable medical sources" and "other sources." Acceptable medical sources include, for example, licensed physicians and psychologists, while other non-specified medical providers are considered "other sources." 20 C.F.R. §§ 404.1513(a) and (e), 416.913(a) and (e), and Social Security Ruling (SSR) 06-03p. Less weight may be assigned to the opinions of other sources than acceptable medical sources. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996). However, "[s]ince there is a requirement to consider all relevant evidence in an individual's case record," the ALJ's decision "should reflect the consideration of opinions from medical sources who are not 'acceptable medical sources' and from 'non-medical sources' who have seen the claimant in their professional capacity." SSR 06-03p. "[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id. See also Smolen v. Chater*, 80 F.3d 1273, 1288-89 (9th Cir. 1996) (ALJ should provide germane reasons as to each lay witness) and *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (same).

1.     Paul Aluan, MHPRC:

Paul Aluan, MHPRC, completed a psychological/psychiatric evaluation form on February 5, 2009. As a Registered Counselor, Mr. Aluan is not an "acceptable medical source." 20 C.F.R. §§ 1502, 416.902. Rather, his opinion is given the weight of a lay witness, and can be rejected by the ALJ if germane reasons are provided.

The ALJ considered Mr. Aluan's evaluation together with those of Dr. Sanchez and Dr.

REPORT AND RECOMMENDATION
PAGE -11

McDuffee.  As previously noted, the Court does not find error in that consideration.  Nor does it find the inferences drawn by the ALJ about those evaluations unreasonable.  The ALJ gave the evaluations minimal weight because they were based on the plaintiff's "subjective and sometimes inaccurate reporting and do not consider the extensive medical record." (AR 25.)  Similarly, the ALJ's consideration of Mr. Aluan's evaluation is legally sufficient.

        2.        <u>Linda Crabtree, MC LMHC CMHS</u>:

Plaintiff argues that the ALJ failed to consider the opinion of Ms. Crabtree, who assigned a Global Assessment of Functioning (GAF) score of 42.  The Commissioner fails to respond to this argument.

As with Mr. Aluan, the ALJ need only have provided germane reasons for the weight given Ms. Crabtree's opinion.  The Court finds that the ALJ did not commit harmful error in failing to discuss the GAF score assessed by Ms. Crabtree.  A GAF score in the range of 41-50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning.  *See* Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) (DSM-IV-TR).  However, the Commissioner has determined the GAF scale "does not have a direct correlation to the severity requirements in [the Social Security Administration's] mental disorders listings."  65 Fed. Reg. 50,746, 50,765-766 (Aug. 21, 2000).

The ALJ did assess plaintiff's mental impairments of ADHD and depression as severe at step two.  In consideration of plaintiff's symptoms, the objective medical evidence and other evidence, the ALJ found plaintiff limited to simple to semi-skilled work.  (AR 21.)  Plaintiff does not posit a persuasive argument that the ALJ's failure to specifically discuss the GAF assessment from a non-acceptable medical source was harmful error.

REPORT AND RECOMMENDATION
PAGE -12

///

### Failure to Develop the Evidentiary Record

"The ALJ has 'a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" *Widmark v. Barnhart*, 454 F.3d 1063, 1068 (9th Cir. 2006) (quoted sources omitted). As asserted by the Commissioner, the "ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). *See, e.g.*, *Bayliss v. Barnhart*, 427 F.3d 1221, 1217 (9th Cir. 2005) (finding no duty to recontact where doctor's opinion was not supported by clinical evidence and was based on claimant's subjective complaints and the ALJ found the record adequate to make a determination as to disability).

Here, plaintiff's argument that the ALJ failed to properly develop the evidentiary record is based on the assertion that the ALJ, and the attorney who represented plaintiff at the hearing, failed to ask questions about plaintiff's ADHD, its effects on her, or on her ability to perform full time work activities. Plaintiff asserts that the subject of her ADHD "never came up." (Dkt. 12 at 16.)

Plaintiff's assertion is not supported by the record. The transcript of the administrative hearing shows that plaintiff's attorney specifically mentioned plaintiff's inability to focus or concentrate. (AR 33.) When plaintiff mentioned that she was taking medications for ADHD as prescribed by Barbara Scott, a "psychiatrist", the ALJ left the record open so that the records

REPORT AND RECOMMENDATION
PAGE -13

could be obtained.[5] (AR 46, 74, 526-35.) However, when asked by her attorney what medical problems prevent her from working, plaintiff mentioned only her back condition. (AR 43-44.) The ALJ found plaintiff's ADHD severe at step two of the sequential evaluation process, rejecting the opinion of a state agency psychologist to the contrary. (AR 18, 24-25.) In considering plaintiff's functional capacity, the ALJ found that "while she does exhibit some psychological symptoms, despite her subjective complaints she is cognitively intact and does not demonstrate an inability to work an unskilled or semi-skilled job." (AR 25.) Plaintiff does not show that the ALJ failed to develop the record with regard to her ADHD.

## **CONCLUSION**

For the reasons set forth above, this matter should be affirmed.

DATED this 27th day of January, 2011.

Mary Alice Theiler
United States Magistrate Judge

---

5 As it turned out, Barbara Scott was an ARNP, not a psychiatrist.